UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Douglas T. Sharp

    v.                                Civil No. 14-cv-369-LM
                                      Opinion No. 2015 DNH 155

Deutsche Bank National
Trust Company, As Trustee
For Morgan Stanley ABS
Capital Inc. Trust 2006-HE3

### O R D E R

In a case that has been removed from the Hillsborough County Superior Court, Douglas Sharp seeks to enjoin Deutsche Bank National Trust Company ("Deutsche Bank") from foreclosing on his mortgage. He claims that Deutsche Bank cannot foreclose because it: (1) lacks the authority to do so (Count I); and (2) breached the implied covenant of good faith and fair dealing (Count II). In addition, he seeks to amend his complaint to add Wells Fargo Bank, N.A. ("Wells Fargo") as a defendant, and to assert a claim that Wells Fargo and Deutsche Bank violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617. Deutsche Bank objects to Sharp's motion to amend as futile and moves to dismiss his complaint for failure to state a claim upon which relief can be granted. The court heard oral argument on Deutsche Bank's motion to dismiss on November 18,

2014. For the reasons that follow, Sharp's motion to amend is denied, and Deutsche Bank's motion to dismiss is granted.

## I. Background

The facts in this section are drawn from Sharp's Amended Verified Complaint, document no. 1-1, his proposed Second Amended Complaint, document no. 13-2, and certain documents that are attached to those complaints or that are appropriately considered in conjunction therewith. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (describing documents courts may consider when ruling on a motion to dismiss).

On December 21, 2005, plaintiff's father, Martin Sharp,[1] executed a promissory note in favor of New Century Mortgage Corporation ("New Century"), in exchange for a loan of $60,000. On the same day that Martin executed the promissory note, Martin and Douglas granted a mortgage to New Century to secure the loan. The mortgage, in turn, encumbered a property in Goffstown, New Hampshire, that Martin and Douglas owned as joint tenants with the right of survivorship.

---

[1] In this order, the court refers to plaintiff as "Sharp" or "Douglas" and refers to his father as "Martin."

2

Notwithstanding the fact that the promissory note identifies Martin as the sole borrower, see State Ct. R. (doc. no. 3-1) 44 of 106, the mortgage defines the term "Borrower" to mean "Martin F[.] Sharp, a single person and Douglas T. Sharp[,] a married person," id. at 2 of 106. In a section titled "Joint and Several Liability; Co-signers; Successors and Assigns Bound," the mortgage provides, in pertinent part:

> Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Id. at 11 of 106. Additionally, in a section titled "Acceleration; Remedies," the mortgage provides that if the borrower defaults, and the default is not cured in a timely manner, "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." Id. at 14 of 106.

3

New Century has executed two documents purporting to assign the Sharps' mortgage. On December 28, 2005, New Century executed a document titled "Assignment of Mortgage," which appeared to assign the Sharps' mortgage to Deutsche Bank ("the 2005 assignment"). Id. at 24 of 106. That document was recorded in the Hillsborough County Registry of Deeds almost two years later, on October 3, 2007. On February 27, 2012, Wells Fargo, acting as attorney-in-fact for New Century, executed a second document purporting to assign the Sharps' mortgage to Deutsche Bank ("the 2012 assignment"). See id. at 29 of 106. That document was recorded in the Hillsborough County Registry of Deeds on March 13, 2012.

In April of 2007, after the 2005 assignment was executed, but before it was recorded, New Century filed for bankruptcy protection. In 2008, the bankruptcy court ordered New Century to convey all of its assets into a liquidating trust.

Martin Sharp died in 2009. Sometime after Martin's death, the complaint does not say when, Douglas stopped making mortgage payments. In June of 2014, Deutsche Bank sent him notice of a foreclosure sale. He responded by sending a letter, titled "Request for Postponement," to Deutsche Bank's mortgage servicer, America's Servicing Company ("ASC"). The letter states:

4

> I, Douglas T. Sharp, request to postpone the trustees sale of the property located at 28 Joffre St. Goffstown, N.H. 03102, to take place on July 24, 2014, in order to organize legal documentation as well as loan modification or sale of the property.

Second Am. Compl., Attach. 8 (doc. no. 13-10), at 6 of 12. In a letter dated eight days later and addressed to Martin, ASC stated:

> We're writing to let you know that we've received an inquiry from Douglas Sharp on your behalf. Since we don't have authorization to respond directly to Douglas Sharp we will be responding to you.
>
> We are currently reviewing the inquiry, and expect to complete our research and provide you with the results on or before August 04, 2012.

Id. at 7 of 12. Four days after that, ASC wrote directly to Douglas, explaining that he "was able to receive certain information for the loan but not the specific information he requested." As the "Request for Postponement" does not include any request for information, it is not clear what information Sharp requested from ASC.

Shortly thereafter, Sharp filed an action in the Hillsborough County Superior Court seeking to enjoin the foreclosure sale. Subsequently, Sharp filed an amended complaint claiming that Deutsche Bank had no authority to foreclose on his mortgage and had violated the implied covenant of good faith and fair dealing. On August 7, 2014, New Hampshire Superior Court Judge Gillian Abramson issued a

5

temporary injunction, enjoining Deutsche Bank from foreclosing on Sharp's mortgage. Deutsche Bank removed the suit to this court thereafter, and moved to dismiss Sharp's amended complaint for failure to state a claim upon which relief can be granted.

In September of 2014, Mari DeBlois of The Way Home, a housing advocacy group, reported to Douglas's counsel that she had attempted to obtain information about Martin's loan from ASC on Douglas's behalf, but had been repeatedly rebuffed on grounds that she was not properly authorized to receive such information. In February of 2015, after Deutsche Bank moved to dismiss Sharp's amended complaint, but before the court ruled on Deutsche Bank's motion, Sharp sent two letters to Wells Fargo, one styled as a "request for information" pursuant to 12 C.F.R. § 1024.36, the other styled as a "notice of error" pursuant to 12 C.F.R. § 1024.35.

In his request, Sharp identified six different kinds of information he was seeking, all related generally to the topic of assuming Martin's status as the borrower of the loan that Martin had received from New Century. Presumably as a result of a typographical error in Sharp's request for information, Wells Fargo construed it as a request for the identity of the owner of the mortgage loan, and provided only that information.

In his notice of error, Sharp asserted that ASC: (1) violated 12 C.F.R. § 1024.35(b)(7) by telling him that he was not entitled to receive information about his father's loan and telling DeBlois that she was not properly authorized to receive information about Martin's loan; and (2) violated 12 C.F.R. § 1024.35(b)(11) by telling DeBlois that she was not properly authorized to receive information about Martin's loan. Wells Fargo responded to Sharp's notice of error by sending him a four-page letter explaining its decision not to provide him with information about his father's loan.

Based upon the foregoing, Sharp now moves to amend his complaint to: (1) add Wells Fargo as a defendant; and (2) add a claim for damages under RESPA against Wells Fargo and Deutsche Bank arising from the responses he received to his request for information and his notice of error.

## II. Discussion

The court begins with Sharp's motion to amend and then turns to Deutsche Bank's motion to dismiss.

### A. Motion to Amend

#### 1. The Legal Standard

Because the time for Sharp to file a motion to amend as of right under Rule 15(a)(1) of the Federal Rules of Civil

7

Procedure has run, the court's disposition of his motion falls under Rule 15(a)(2). Rule 15(a)(2) provides that a party who is no longer able to amend the complaint as of right may amend only with the court's leave, and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the proposed amendment seeks to add a new party, "the motion is technically governed by Rule 21, which provides that 'the court may at any time, on just terms, add or drop a party. . . .'" Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010) (citations omitted). "However, the same standard of liberality applies under either [Rule 15(a) or 21]." Id. (internal quotation marks omitted).

The court may deny a motion to amend "for any adequate reason apparent from the record," including futility of the proposed amendment. Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007) (quoting Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the

8

factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley, 772 F.3d at 71 (citations and internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

2. Analysis

In the RESPA claim that Sharp seeks to add to his complaint, he asserts that Wells Fargo and Deutsche Bank: (1) failed to provide him with the documentation he asked for in his request for information, in violation of 12 C.F.R. § 1024.36(d)(1); and (2) failed to correct the mistakes he identified in his notice of error or provide an adequate explanation of their belief that no mistake had been made, in violation of 12 C.F.R. § 1024.35(e)(1)(i). Deutsche Bank argues that Sharp's motion to amend should be denied on grounds of futility because Sharp lacks standing to bring the claim he seeks to assert. Sharp lacks standing, according to Deutsche Bank, because he was not a borrower on the loan that was secured

by the mortgage that he and his father granted to New Century. The court agrees.

The claim that plaintiff seeks to add is based upon several different provisions in RESPA's regulations. Those provisions describe the duties owed by mortgage loan servicers to "borrowers." See 12 C.F.R. §§ 1024.35(e)(1)(i) & 1024.36(d)(1). RESPA itself also speaks of the duties owed by loan servicers to borrowers. See, e.g., 12 U.S.C. §§ 2605(e)(1)(A) & (2). And, when those duties are breached, RESPA establishes that a violator is liable to a borrower. See 12 U.S.C. § 2605(f). The statute and the regulations on which Sharp bases his claim speak of duties owed by mortgage loan servicers to borrowers but say nothing about duties owed to mortgagors. Neither RESPA nor its regulations define the term "borrower." While a statutory definition of the term "borrower" would certainly make it easier for the court to determine whether Sharp has standing to bring a RESPA claim, there is ample judicial authority on that point.

In a recent case out of the Eastern District of California, the court construed the RESPA provisions at issue here. Singh v. Wells Fargo Bank N.A., No. CIV 2:11-cv-0401-GEB-JFM (PS), 2011 WL 2118889 (E.D. Cal. May 27, 2011), report and recommendation adopted by 2011 WL 2785492 (E.D. Cal. July 11, 2011). In Singh, the plaintiff and his wife owned a parcel of

10

real property as joint tenants. Id. at *1. The plaintiff's wife was the sole borrower on a loan that was secured by a mortgage on the couple's property, and the mortgage listed both the plaintiff and his wife as borrowers. See id. The plaintiff sued the mortgagee in multiple counts, including one under RESPA. See id. at *2. Magistrate Judge Moulds recommended dismissal of the RESPA claim for failure to satisfy Rule 8(a)(1) of the Federal Rules of Civil Procedure. See id. at *3. He also addressed the plaintiff's RESPA claim substantively. See id. After pointing out that the complaint suggested that it might have been brought under either 12 U.S.C. § 2605 or 12 U.S.C. § 2607, he had this to say:

> Regardless of the particular section [of RESPA] identified by plaintiff, the RESPA claim must fail because he is not a borrower on the loan. See, e.g., Wilson v. JPMorgan Chase Bank, N.A., [No. CIV. 2:09-863 WBS GGH,] 2010 WL 2574032 (E.D. Cal. [June 25,] 2010). Insofar as plaintiff contends there were RESPA violations at the time of the origination of the loan, plaintiff lacks standing as he did not sign the Promissory Note. See id. To the extent plaintiff argues that he submitted a QWR [qualified written request] to Wells Fargo, Wells Fargo only had the duty to respond to QWRs sent "from the borrower"—in this case, [the plaintiff's wife]. Wells Fargo was under no obligation to respond to any requests sent by plaintiff. See 12 U.S.C. § 2605(e)(1)(A).

Id. at *4. Based upon the foregoing, the court determined that the plaintiff's RESPA claim failed as a matter of law. See id.

Wilson involved a RESPA claim against a mortgage loan servicer for failing to respond to the plaintiff's request for information pursuant to 12 C.F.R. § 1024.36. See 2010 WL 2574032, at *9. In Wilson, the plaintiff and her husband mortgaged a property they owned jointly to secure a loan that was made to the plaintiff's husband alone. See id. at *1. The plaintiff's RESPA claim was based upon a qualified written request ("QWR")[2] she submitted to the lender and the mortgage loan servicer. See id. At some point before the plaintiff filed suit her husband died. Judge Shubb dismissed the RESPA claim this way:

> Plaintiff's RESPA claims must fail because she explicitly alleges that she was "not a borrower of the loan." Under RESPA, a servicer only has the duty to respond to QWRs sent "from the borrower," and accordingly defendant was under no obligation to respond to plaintiff's QWR. See 12 U.S.C. § 2605(e)(1)(A). Accordingly, plaintiff cannot recover for defendant's failure to respond to her improper QWR.

Id. (citation to the record omitted).

Here, while Sharp points out that he was named as a borrower in the mortgage, he does not allege that he was a borrower on the loan and, indeed, the promissory note does not bear his signature. Thus, with regard to his relationship to

---

[2] "Qualified written request" is a statutory term for an inquiry from a borrower to a mortgage loan servicer. See 12 U.S.C. § 2605(e)(1)(B).

12

the loan that was secured by the mortgage on his property, Sharp stands in the same position as the plaintiffs in Singh and Wilson. Sharp has identified no judicial authority running counter to Singh and Wilson, and the court has been unable to locate any. Accordingly, the court concludes that Sharp lacks standing to assert a claim under 12 U.S.C. § 2605(f) based upon Wells Fargo's responses to his request for information and his notice of error.[3] Because he lacks standing, his motion to amend must be denied on grounds of futility.

The court notes, however, that while plaintiff's RESPA claim arises under 12 U.S.C. § 2605(f) and its related regulations, i.e., 12 C.F.R. §§ 1024.35 & 1024.36, his reply brief directs the court's attention to another regulation that,

---

[3] At first blush, Sharp's argument for standing based upon his being listed as a borrower in the mortgage has some appeal. But the appeal is eroded by the mortgage itself, which distinguishes between mortgagors such as Martin, who assume an obligation to repay a loan by executing a promissory note, and mortgagors such as Douglas, who do not. Given that Martin executed the note on the same day that he and Douglas executed the mortgage, one could reasonably infer that Martin and Douglas made a conscious decision to protect Douglas from personal liability on the note. By extending various rights and protections to "borrowers" rather than "mortgagors" in RESPA, Congress appears to have limited the coverage of the provisions of RESPA on which Sharp bases his claim to the subset of mortgagors who, like Martin, both pledged security and faced personal liability for the repayment of a loan. Under that view of RESPA, forgoing the protections of that statute is the price a mortgagor pays for avoiding personal liability on a note.

13

in his view, establishes his standing. That regulation provides:

> (a) <u>Reasonable policies and procedures</u>. A servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section.
>
> (b) <u>Objectives</u>—(1) <u>Accessing and providing timely and accurate information</u>. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:
>
> . . . .
>
> (vi) Upon notification of the death of a borrower, promptly identify and facilitate communication with the successor in interest of the deceased borrower with respect to the property secured by the deceased borrower's mortgage loan.

12 C.F.R. § 1024.38 (emphasis in original). For the purposes of § 1024.38, Sharp qualifies as a successor in interest to Martin. <u>See</u> Consumer Fin. Prot. Bureau, Bulletin 2013-12, Implementation Guidance for Certain Mortgage Servicing Rules, 2013 WL 9001249, at n.7 (2013). Notwithstanding his failure to cite § 1024.38(b)(iv) in his Second Amended Complaint, Sharp argues that he "is protected by, and entitled to enforce, this regulation." Pl.'s Reply Br. (doc. no. 16) 4. The court does not agree.

Nothing in § 1024.38 suggests that RESPA creates a private right of action to enforce that rule. And, indeed, it does not.

As the Consumer Financial Protection Bureau explained in its official interpretation of § 1024.38:

> Ultimately, the Bureau agrees with the commenters that allowing a private right of action for the provisions that set forth general servicing policies, procedures, and requirements would create significant litigation risk. . . .
>
> The Bureau believes that supervision and enforcement by the Bureau and other Federal regulators for compliance with and violations of § 1024.38 respectively, would provide robust consumer protection without subjecting servicers to the same litigation risk and concomitant compliance costs as civil liability for asserted violations of § 1024.38. . . .
>
> Therefore, the Bureau is restructuring the final rule so that it neither provides private liability for violations of § 1024.38 nor contains a safe harbor limiting liability to situations where there is a pattern or practice of violations.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10778-79 (Feb. 14, 2013). Based upon the foregoing, the court is compelled to conclude that while Sharp is protected by § 1024.38(b)(iv), he has no private right of action against defendants to enforce that rule. Moreover, Sharp's status as a successor in interest for the purposes of § 1024.38 does not make him a borrower for the purposes of §§ 1024.35 and 1024.36.

For all of these reasons, Sharp's motion to amend must be denied.

15

B. <u>Motion to Dismiss</u>

Sharp claims that Deutsche Bank lacks the authority to foreclose on his mortgage (Count I), and that it violated the covenant of good faith and fair dealing (Count II). Deutsche Bank moves to dismiss both counts for failure to state a claim upon which relief may be granted. The court addresses each count in turn.

1. <u>Count I - Authority to Foreclose</u>

Sharp first claims that Deutsche Bank lacks the authority to foreclose because it cannot demonstrate that it is an assignee of his mortgage, as required by N.H. Rev. Stat. Ann. ("RSA") § 479:25. That is so, Sharp contends, because neither the 2005 assignment nor the 2012 assignment was legally effective. He argues that the 2005 assignment is invalid because it was not recorded until after New Century had filed for bankruptcy. He argues that the 2012 assignment is invalid because it was neither executed nor recorded until after New Century filed for bankruptcy.[4] Deutsche Bank contends that Sharp

---

[4] At the November 18th hearing, Sharp suggested that the assignment document was invalid. However, he did not dispute the validity of the document in his complaint, and has not sought leave to amend his complaint to include such a claim. Thus, any such allegation is deemed waived. See <u>Iverson v. City of Bos.</u>, 452 F.3d 94, 103 (1st Cir. 2006).

16

has failed to state a claim because there is no requirement that an assignment be recorded.

Sharp is correct that the power of sale incorporated into a mortgage may be exercised only by "the mortgagee or his assignee." RSA 479:25. In his complaint, Sharp alleges that New Century assigned his mortgage to Deutsche Bank in 2005, and he attached a copy of the 2005 assignment to his complaint. Thus, according to the complaint, Deutsche Bank was the assignee. Pursuant to RSA 479:25, therefore, Deutsche Bank had the authority to exercise the power of sale in the mortgage.

Sharp argues that Deutsche Bank lacked the authority to foreclose due to its untimely recording of the assignment. However, a recent decision from New Hampshire Superior Court Judge Marguerite Wageling holds that "[n]othing in RSA 479:25 requires the mortgagee [to] record the mortgage or assignment of the mortgage in order to trigger the statutory power of sale." Fuller v. Fed. Nat'l Mortg. Ass'n, No. 218-2011-cv-00668, 2012 N.H. Super. LEXIS 55, at *9 (N.H. Super. Ct. Oct. 2, 2012). Sharp has identified no authority to the contrary. Under New Hampshire law, an assignee of a mortgage therefore has the right to exercise the statutory power of sale without the assignment having been recorded. Thus, the timing of Deutsche Bank's recording of the assignment has no bearing on its status as an

assignee or its authority to foreclose. Accordingly, the factual allegations underpinning Count I do not "set forth a plausible claim upon which relief may be granted." Foley, 772 F.3d at 71. For that reason, Count I is dismissed.

### 2. Count II - Good Faith and Fair Dealing

Sharp claims that Deutsche Bank breached the covenant of good faith and fair dealing implied in his mortgage agreement by "refus[ing] to deal with, or even acknowledge, Mr. Douglas Sharp, and refus[ing] to voluntarily postpone the foreclosure sale." Notice of Removal, Attach. 1 (doc. no. 1-1) ¶ 34. Deutsche Bank responds that exercising its bargained-for right to foreclose following default does not amount to a breach of the covenant of good faith and fair dealing. The court agrees.

In New Hampshire, every agreement includes "an implied covenant that the parties will act in good faith and fairly with one another." Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010) (citing Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009)). The New Hampshire Supreme Court has observed that:

> there is not merely one rule of implied good-faith duty, but a series of doctrines, each of which serves a different function. The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance.

18

Id. (citations omitted). Like many similarly situated plaintiffs, Sharp understands his claim to fall within the third category of cases described in Birch, which involves limits on the discretion a party may exercise when performing its contractual obligations. See Rouleau v. U.S. Bank, N.A., No. 14-cv-568-JL, 2015 WL 1757104, at *3 (D.N.H. Apr. 17, 2015); Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 127 (D.N.H. 2012). The function of that category "is to prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations as well as with common standards of decency, fairness and reasonableness." Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010) (citing Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009)).

Here, the mortgage expressly provides that, in the event Sharp defaults on the mortgage, Deutsche Bank may exercise the statutory power of sale. State Ct. R. (doc. no. 3-1) 14 of 106. Thus, Deutsche Bank's exercise of that right is consistent with the parties' "agreed-upon common purpose and justified expectations . . . ." Id. As such, it cannot serve as the basis for a claim for breach of the implied covenant of good faith and fair dealing. See Rouleau, 2015 WL 1757104, at *5 ("a party does not breach the duty of good faith and fair dealing

19

simply by invoking a specific, limited right that is expressly granted by an enforceable contract"); see also Moore, 848 F. Supp. 2d at 129 ("the mere fact that some or all of the defendants exercised their contractual right to foreclose on the Moores after they defaulted on their mortgage payments does not amount to a breach of the implied covenant") (citations omitted). Accordingly, Count II does not state a claim on which relief can be granted.

### III. Conclusion

For the reasons detailed above, Sharp's motion to amend, document no. 13, is denied, and Deutsche Bank's motion to dismiss, document no. 4, is granted. The injunction issued by Judge Gillian Abramson on August 7, 2014 is hereby dissolved. The clerk of the court shall close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 11, 2015

cc:   Stephanie Anne Bray, Esq.
      Michael R. Stanley, Esq.